IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO MARTINEZ,

    Petitioner,                    No. CIV S-09-1727 GGH P

    vs.

JAMES D. HARTLEY,

    Respondent.                ORDER

_____/

I. Introduction and Summary

        The major issue in this case involves admission of evidence that petitioner was in possession of a handgun at the time of the crimes charged. However, it does not appear reasonable to assert that the gun evidence had anything to do with the crimes charged, i.e., it was totally irrelevant. Nevertheless, because the Supreme Court has not spoken to the issue of admission of irrelevant evidence being a due process violation, and because the undersigned does not find that under Supreme Court law the admission of this evidence produced a fundamental unfairness, the undersigned does not find the admission of the evidence AEDPA unreasonable. The remaining issues have no merit. The petition should be denied.

II. Background

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action is before the undersigned pursuant to both

1

parties consent. Docs. 7, 9. Petitioner challenges his 2006 conviction for (a) unlawfully driving or taking a vehicle, Cal. Vehicle Code 10851(a); (b) receiving or concealing a stolen motor vehicle, Cal. Penal Code 496d(a); and (c) driving while his license was suspended, Cal. Vehicle Code 14601.1(a) (a misdemeanor). Petitioner admitted a prior strike and a prior prison term and was sentenced to seven years in state prison on the first charge. He received an 80 day concurrent sentence on the suspended license charge and a stayed sentence on the receiving/concealing a stolen motor vehicle.

This action is proceeding on the original petition (Pet.) filed June 22, 2009, raising the following claims: 1) the trial court erred by permitting the introduction of irrelevant and prejudicial evidence; 2) the California Court of Appeal erred in denying a claim on appeal utilizing an argument not presented by respondent; and 3) the trial court erred by imposing an upper term sentence. Pet. at 6.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

1        "Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

         "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

         The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the

3

established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> Prosecution case-in-chief
> In November 2004, Saied Camkar purchased a white Toyota Camry. There was nothing in the location where the rear license plate typically is affixed. Within a week, the car was stolen out of Camkar's garage.
>
> Approximately four or five times in December 2004 or January 2005, Paul Medina, the father of [petitioner's] girlfriend, Amparo, saw [petitioner] driving a white Toyota with "CarMax" paper license plates. [Petitioner] would park the car in front of Medina's house. On each occasion, [petitioner] was the driver, and Amparo and her two sons got out of the car. Medina viewed a photograph of Camkar's stolen car and identified it as the one he had seen [petitioner] drive and park.
>
> On January 24, 2005, Sacramento County Sheriff's Deputy Robert Book was parked in a driveway in a rural area. As he stood outside his patrol car, he saw a car approaching on the adjacent two-lane road. The car was traveling at a high rate of speed and its headlights were not illuminated. Book pulled out his flashlight, illuminated the car's interior and observed three occupants. The driver appeared to be a white or Hispanic male wearing a dark jacket and a white hat. Book entered his patrol car, activated his overhead lights and siren, and pursued the car. During a high-speed chase that reached approximately 135 miles per hour, Book observed the car to be a white compact with a CarMax paper license plate. The chase proceeded from Sacramento County to Ione in Amador County. When the cars entered a residential area, Book terminated the pursuit.

Approximately 30 minutes later, Ione Police Corporal Christopher Frey was dispatched to a modular home park to investigate a report of a possible kidnapping. Upon his arrival, Frey spoke with Felix Ramos, who appeared disoriented. Ramos was wearing a red hat; his pants were wet. Other than a red mark on the side of his head, Ramos did not have any visible injuries. He gave a vague description of the alleged kidnappers. Because Ramos mentioned that a gun had been involved, Frey called for additional police units. Ramos agreed to go back to the police station to be questioned further. As Frey and Ramos left the modular home park, Frey noticed a white Toyota Camry with CarMax paper plates crashed into a cyclone fence. Frey did not see anyone near the car. Ramos identified the Camry as the one he had been in.

After a canine unit and the swat team arrived, Corporal Frey removed some paper concealing the Camry's identification number and verified that the car had been stolen. He observed that the windshield had a large "spider web" crack, which suggested that an occupant had impacted the windshield. Ione Police Sergeant David Moranz found a backpack in the trunk. The backpack contained a number of items, including a telephone card and a high school equivalency card, both in [petitioner's] name. He also found videotape that was later determined to contain images of [petitioner] and a woman named Jessica Marcano. A white baseball cap was found in the rear seat area of the car. At trial, Deputy Book identified the car as the one he had pursued.

As Sergeant Moranz and Corporal Frey were taking Ramos home, they noticed a taxi less than a quarter-mile from the crash site. Moranz stopped the taxi and ordered its two passengers, [petitioner] and Marcano, out of the cab. [Petitioner] and Marcano matched Ramos's description of his kidnappers, and both had wet pants and wet socks. [Petitioner] had an injury to the right side of his forehead. Marcano had no visible injuries.

Corporal Frey spoke separately with [petitioner] and Marcano. During her interview, Marcano claimed the car had been driven by a man she had met at a bar. She maintained that she had been the front seat passenger and [petitioner] had been in the back.

During a recorded interview, [petitioner] told an officer that he had been in the car that crashed. He identified the car's driver as "Mike," whom he had met earlier that evening. Mike was wearing a red hat and some kind of sweatshirt. [Petitioner] first said he had sat in front, but then he said he was not sure. When asked if he had been injured in the accident, he said his head was a "little shooken." He said that Jessica Marcano had been in the car, but he was unsure of the total number of occupants. He did not see any lights or hear sirens behind him prior to the crash. After the crash, Mike took off running. [Petitioner] got "spooked" and walked away from the crash scene. He did not know anything about any gun or any gunshots.

The officers determined that Ramos was not a kidnapping victim and instead was a friend of [petitioner] and Marcano. All three were arrested. Sergeant Moranz took [petitioner] to a hospital. Once there, Moranz searched [petitioner] and found several receipts in his pants pocket. One was a receipt from a large retailer for a purchase, several hours earlier, of .38-caliber ammunition. [Petitioner]

5

1  claimed that he had never seen the receipts before and surmised that he had "'just grabbed them'" and put them in his pocket.

The Ione Police Department notified Saied Camkar that his stolen car had been recovered. Camkar later retrieved the car from an Ione storage facility. He did not recognize the CarMax paper license plate attached to the car.

The next morning a teenage girl found a .38-caliber handgun in a driveway in the proximity of the location in which the high-speed chase had begun. The gun contained five expended shell casings.

Jessica Marcano testified that she and [petitioner] previously had a dating relationship. She knew Ramos from high school. She testified that she, [petitioner], Michael Lorenzo and Ramos were in the Toyota Camry on the night of the incident but she did not know the car was stolen. She thought it was Lorenzo's car.

Marcano testified that Ramos was the driver, [petitioner] was the front seat passenger, and she and Lorenzo were in the back. She admitted having falsely identified Lorenzo as the driver at the time of the incident.

After identifying Ramos as the driver, Marcano testified that Lorenzo "stopped" the car to urinate and then started shooting a handgun into the air. During the police pursuit, Lorenzo tossed something out the window and Marcano figured it was the gun. After the car crashed, they all fled.

An Amador County District Attorney investigator testified that he had spoken with Marcano prior to trial. Marcano told him that, at the time of the police pursuit, Lorenzo was driving, Ramos was in the front passenger seat, and she and [petitioner] were in the back seat. Marcano told the investigator that she had seen a person toss a handgun out the car window.

The parties stipulated that, as to count III, "[petitioner's] driving privileges were suspended and revoked on the date of January 23, 2005," and [petitioner] "was aware" of that fact.

Defense
[Petitioner's] brother testified that he had a 2004 Nissan Sentra that he loaned to [petitioner] once in December 2004 and twice in January 2005. The brother put CarMax paper license plates on the car because he had not yet received the plates issued for the car. Amparo Medina testified that she and [petitioner] borrowed the brother's Sentra and drove it to her parents' house "quite a few" times.

People v. Martinez, 2008 WL 2737450 at *1-3.

IV. Argument & Analysis

Claim 1 - Admission of Evidence

Petitioner argues that his due process rights were violated when the trial court

6

1 permitted introduction of evidence relating to the gun. Pet. at 6.

2         *Legal Standard*

3         "Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). See also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal v. Van de Kamp, 926 F.2d 918, 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983)).

        The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle, 502 U.S. at 72. In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit noted the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams[v. Taylor], 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. at 1101. Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir. 2005).

*Discussion*

Petitioner argues that his right to a fair trial was violated when the trial court permitted admission of the gun evidence. Pet. at 6. Petitioner states the evidence had no relevance and was highly prejudicial.

The California Court of Appeal denied this claim in a reasoned opinion:

> [Petitioner] contends the trial court erred by denying his motion to exclude evidence of the "recovery of a handgun in the Galt area" on grounds it was irrelevant, or its prejudicial effect substantially outweighed any relevance. He claims the error requires reversal of all three counts. We are not persuaded.
>
> In the written motion, [petitioner] argued that the recovered gun was not relevant to the crimes of unlawful driving of a vehicle and receiving a stolen car, which "are crimes of possession and knowledge." [Petitioner] further argued that introduction of evidence of the found gun would "necessitate undue consumption of time, create substantial danger of undue prejudice, confuse the issues, or [ ] mislead the jury."
>
> The prosecutor countered that the recovered gun was probative as to why the motorist had fled the scene in the high-speed chase. The prosecutor added that several witnesses, including the people who had been in the car and the young student who had found it, could testify concerning it. The trial court twice ruled that the evidence would be admitted.
>
> """Only relevant evidence is admissible [citations], and all relevant evidence is admissible unless excluded under the federal or California Constitution or by statute. [Citations.] Relevant evidence is defined in Evidence Code section 210 as evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' The test of relevance is whether the evidence tends '"logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence. [Citations.]" [Citation.]' [Citation.]" (People v. Carter (2005) 36 Cal.4th 1114, 1166-1167 (Carter).)
>
> In this case, identity of [petitioner] as the motorist was material to count III (driving while privilege is suspended; Veh.Code, § 14601.1, subd. (a)), as to which there was no suggestion that liability could be vicarious.
>
> As noted, the prosecutor argued that the recovered gun was probative as to why the motorist had fled the scene in the high-speed chase.[1] The jury would not be

---

[1] [Petitioner] has not addressed the theory of relevance argued by the prosecutor. Any challenge to that theory is forfeited. (See People v. Harper (2000) 82 Cal.App.4th 1413, 1419, fn.

8

compelled to speculate that the motorist had fled for some unexplained reason, while a passenger had discarded the gun for a reason that was equally unexplained. Rather, the jury could deduce that the motorist had fled in order to distance himself or herself from the gun. The prosecutor proffered independent evidence that only [petitioner], and not any of his companions, had a very recent receipt for the type of ammunition used by the gun. Coupled with that evidence, the evidence of the recovered gun had some "tendency in reason" to identify [petitioner] as the motorist. (Evid.Code, § 210; Carter, supra, 36 Cal.4th at pp. 1166-1167.)[2]

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124-1125 (Rodrigues).)

[Petitioner] has not attempted to show that the trial court balanced relevance and prejudicial effect in an arbitrary, capricious or patently absurd manner. (Rodrigues, supra, 8 Cal.4th at pp. 1124-1125.) Indeed, he has not even addressed the theory of relevance argued by the prosecutor. (See fn. 3, ante.) His argument that the evidence was more prejudicial than probative presupposes that the probative value was nil. That presupposition fails for the reasons we have stated. [Petitioner's] motion to exclude the handgun evidence was properly denied.

People v. Martinez, 2008 WL 2737450 at *3-5.

Because violation of clearly established law as pronounced by the United States Supreme Court is the sine qua non for an AEDPA violation, see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted if due process violation not clearly established by the Supreme Court), the mere fact that evidence was improperly admitted under state law is not determinative. In the relevance context of evidence submitted by the prosecution, in order to qualify as a due process violation, the evidence has to be totally unnecessary to prove an element of the case, and highly prejudicial in its own right. See e.g. McKinney v. Rees, 993

---

4.)

[2] The Attorney General allows that "possession of a gun standing alone does not tend to prove whether [petitioner] drove the stolen vehicle." However, when the found gun evidence is combined with the receipt for the ammunition, an inference of driving may be drawn.

F.2d 1378, 1384 (9th Cir. 1993) )admission of evidence that defendant owned a knife collection irrelevant and prejudicial). However, the Ninth Circuit has also held that the Supreme Court has never so stated, and therefore, a petition filed after the AEDFPA effective date cannot be granted on the basis of irrelevant, prejudicial evidence. Holley v. Yarborough, supra, 568 F.3d at 1101. The Supreme Court has not spoken to the contrary since Holley, and petitioner's claim is defeated thereby.

But even if Holley did not supply the rule for this case, the undersigned would not find a fundamental unfairness because of admission of the gun evidence. That is not because the evidence was at all relevant – it is not – but because the admission of the gun evidence was not prejudicial enough.

The undersigned cannot reconcile the relevance interpretation with the need to show that petitioner was driving for the suspended license charge, perhaps for the unlawfully driving *or* taking charge, and not at all for the concealing a stolen vehicle charge. First with respect to the prosecutor's reasoning – that he was attempting to show motive for the high speed getaway and chase – there was no charge involving a high speed chase; therefore, there was no need to show a motive for it.[3] Next the argument goes, the evidence was needed, not for an element that the prosecutor had to prove, but to keep the jury from speculating why the high speed chase had gone down at all. But who cares – petitioner was not charged with a crime involving a high speed chase, and the reasons for the high speed chase went to nothing that the jury had to decide. Indeed, the needless attempt to introduce evidence to preclude the jury from speculating on matters that were irrelevant to the case would only invite more speculation as to why petitioner had the gun in the first place.

The Court of Appeal then held that the gun evidence was necessary to show the identity of petitioner for the suspended license charge. But the undersigned is at a loss as to how

---

[3]The more logical reason why the high speed chase took place is that all in the car knew that the car was stolen.

the evidence which connected petitioner to the gun would show that he was in fact driving the car. The mere fact that a gun was tossed from the car says nothing about whether it was tossed from the driver's or the passenger's seat. And no evidence was introduced from which that fact could be deduced. The gun and receipt evidence did confirm that petitioner had acquired the gun, and hence petitioner's identity in the events, but petitioner's identity *per se* as being a person in the car was uncontested and a non-issue; the issue was whether petitioner was driving.[4]

The evidence was prejudicial. Attempting to show the jury that petitioner was not only foolhardy, but foolhardy with a deadly weapon, would place the petitioner in a more dangerous light with the jury for the charges actually brought. As observed above, it also invited the jury to speculate about why petitioner had the weapon in the first place, i.e., what greater evil was he up to.

However, the court cannot find the evidence of the gun so prejudicial as to warrant the granting of the writ. As demonstrated by the Court of Appeal opinion, there was plenty of evidence on the primary charges. Witnesses had seen petitioner with the stolen car on numerous occasions; they had witnessed the coverup application of the "CarMax" plates. Whether petitioner had taken the stolen car, Cal. Vehicle Code § 10851(a), or concealed a stolen car, Cal. Penal Code § 496d(a), was a foregone conclusion, and did not depend on petitioner as the driver. While the misdemeanor driving with a suspended license charge, Cal. Vehicle Cod 14601.1(a) did depend on petitioner as the driver, and is supported only by the inference that one who otherwise possesses a car usually drives it, prejudice from the admission of gun evidence did not relate enough to the issue of driver status to say that conviction on this misdemeanor was fundamentally unfair.[5]

For these reasons, this claim is denied.

---

[4] The gun evidence supplied no more of an inference that petitioner was driving as would the discovery of a thrown-away knife or Coke bottle possessed by petitioner.

[5] Petitioner raises no sufficiency of the evidence claim.

11

Claim 2 - Court of Appeal Error

Petitioner next argues that on appeal, the Court of Appeal resolved a claim on its own theory of relevancy that had not been argued or briefed by respondent. Pet. at 6.

*Legal Standard*

Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1981); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Estelle v. McGuire, 502 U.S. at 68.

*Discussion*

On direct appeal, petitioner made the same argument regarding the admission of the gun evidence discussed in claim one above. Respondent filed a reply brief arguing that the admission of the gun evidence was proper as it was relevant to evaluate petitioner's credibility pursuant to California Evidence Code. § 210. Lod. Doc. 2 at 9-10. However, the California Court of Appeal upheld the trial court's ruling noting that it was probative to why the parties fled the scene while being chased by the police. Petitioner filed a petition for a rehearing with the California Court of Appeal noting that the Court of Appeal relied on a theory not advanced by respondent. Lod. Doc. 5 at 2. Petitioner sought a rehearing and an opportunity to file briefing regarding the court's ruling, pursuant to California Government Code § 68081.[6] The petition for a rehearing was denied. Petitioner appealed this issue to the California Supreme Court which denied review. Petitioner now seems to argue that his federal due process rights were violated as a result.

---

[6] California Government Code § 68081 states: Before the Supreme Court, a court of appeal, or the appellate division of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party.

While petitioner appears to argue a violation of due process, the claim ultimately seeks federal habeas relief concerning the application of state law and the alleged error of the state appellate court. This claim is foreclosed pursuant to Estelle. That is, petitioner argues that the state courts did not correctly apply their own standards in reviewing appeals. This argument does not state a cognizable claim in habeas corpus. More importantly, it does not address whether petitioner's conviction violated the Constitution or the laws of the United States.

To the extent petitioner could be alleging a violation of due process, petitioner cannot transform a state law issue into a federal claim by simply claiming "due process" error. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997). Even if the Court of Appeal did err, any error was harmless, as the undersigned has already analyzed the underlying claim in the prior section, and found it did not warrant habeas relief. Petitioner's claim is denied.

### Claim 3 - Sentencing

Petitioner argues that the trial court erred by imposing an upper term sentence relying on facts not found by the jury. Pet. at 6.

*Legal Standard*

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court held as a matter of constitutional law that, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303. There is a narrow exception to this rule, however, for enhancements that are based on prior convictions; these need not be submitted to the jury. See Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998) ("[T]o hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating

recidivism as 'go[ing] to punishment only.'"); Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008).

In People v. Black, 35 Cal. 4th 1238 (2005) ("Black I"), the California Supreme Court held that California's statutory scheme providing for the imposition of an upper term sentence did not violate the constitutional principles set forth in Apprendi and Blakely. The court in Black I reasoned that the discretion afforded to a sentencing judge in choosing a lower, middle or upper term rendered the upper term under California law the "statutory maximum." Black I, 35 Cal. 4th at 1257-61.

In Cunningham v. California, 549 U.S. 270 (2007), the United States Supreme Court held that a California judge's imposition of an upper term sentence based on facts found by the judge (other than the fact of a prior conviction) violated the constitutional principles set forth in Apprendi and Blakely. Cunningham expressly disapproved the holding and the reasoning of Black I, finding that the middle term in California's determinate sentencing law was the relevant statutory maximum for purposes of applying Blakely and Apprendi. Cunningham, 549 U.S. at 291-94.[7][8]

In light of Cunningham, the Supreme Court vacated Black I and remanded the case to the California Supreme Court for further consideration. Black v. California, 549 U.S. 1190 (2007). On remand, the California Supreme Court held that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." People v. Black, 41 Cal. 4th 799, 813

---

[7] The Ninth Circuit subsequently held that Cunningham may be applied retroactively on collateral review. Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

[8] The effect of Cunningham is much dissipated in that the California legislature, subsequent to Cunningham, provided that the upper term was the statutory maximum. See People v. Sandoval, 41 Cal. 4th 825, 845, 62 Cal. Rptr. 3rd 588, 603 (2007).

(2007) (Black II).  In other words, as long as one aggravating circumstance has been established in a constitutional manner, a defendant's upper term sentence withstands Sixth Amendment challenge.

Thereafter, relying on Black II, the Ninth Circuit confirmed that, under California law, only one aggravating factor is necessary to authorize an upper term sentence.  Butler v. Curry, 528 F.3d 624, 641-43 (9th Cir. 2008).

Discussion

The Court of Appeal noted the following:

> The trial court imposed the upper term of imprisonment on count I based upon numerous factors including its finding that "[petitioner's] prior convictions as an adult are numerous."  In his opening brief, [petitioner] contended the sentence violated Cunningham, supra, 549 U.S. 270, because it was based on facts that were neither found true by the jury nor admitted by him.  The Attorney General responded that the upper term sentence is proper under People v. Black (2007) 41 Cal.4th 799 (Black II), which was decided after [petitioner] filed his opening brief.  In his reply brief, [petitioner] asserts that Black II was wrongly decided, but he concedes that Black II supports his sentence and that this court must follow it.  (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)  We accept the concession and find no error.

People v. Martinez, 2008 WL 2737450 at *6.

It is apparent from the record that the trial court properly relied on petitioner's prior criminal conduct as the aggravating factor in determining the sentence, which is also consistent with established federal authority.  RT at 510-511, 514-15, 518-19.  Since the upper term could be found on this one fact alone, and the fact is not one which requires a jury, see Apprendi, petitioner has no claim here.   For these reasons petitioner's claim is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's writ of habeas corpus is denied.

2. The court declines to issue a certificate of appealability in this case.

Dated: August 18, 2010                          /s/ Gregory G. Hollows

                                                UNITED STATES MAGISTRATE JUDGE

ggh:ab - mart1727.hc

15